IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| DOUGLAS DEANGELIS, | § | |
| | § | No. 485, 2024 |
| Defendant Below, Appellant, | § | |
| | § | Court Below–the Superior |
| v. | § | Court of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2302006594(N) |
| | § | |
| Appellee. | § | |
| | § | |

Submitted: November 19, 2025
Decided: January 28, 2026

Before **SEITZ**, Chief Justice; **VALIHURA**, and **GRIFFITHS**, Justices.

## **ORDER**

After careful consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)  Appellant Douglas DeAngelis appeals from a Superior Court order denying his motion for a new trial. DeAngelis contends that the trial court's response to a note from the jury functioned as an *Allen* charge that unduly coerced the jurors to reach a verdict against him. For the reasons that follow, we find that the trial court's response to the jury's note was not an *Allen* charge. Accordingly, we affirm the Superior Court's judgment.

(2)     On February 14, 2023, DeAngelis was arrested for sexually assaulting a female victim.[1]  He was indicted on one count of second-degree rape, one count of fourth-degree rape, and one count of second-degree assault.[2]  The trial spanned six days, beginning on Monday, April 15, 2024.[3]  The jury began its deliberations on Friday, April 19, 2024, but was unable to reach a verdict on that day.[4]

(3)     The jury resumed its deliberations on Monday, April 22, 2024.[5]  The jury deliberated through the morning, sending two notes to the trial judge just before the lunch break.[6]  The first note read:

> In relation to Rape in the 2nd Degree:  Is "sexual intercourse" inclusive of genitalia coming in contact without penetration?  The definition we received states "an act of physical union of a person's gen[nitalia]."  We are looking for clarity.[7]

Before the trial court could respond to the first note, the jury sent the second note. The second note read:

> IF THE JURY HAS REACHED A VERDICT ON ONE OR MORE CHARGES, BUT NOT ALL, AND IS UNABLE TO REACH CONSENSUS ON THE REMAINING, IS THE ENTIRE DECISION NULLIFIED, OR IS A PARTIAL HUNG JURY ACCEPTED?[8]

---

[1] App. to Opening Br. at A1 (Super. Ct. Crim. Dkt. No. 1 [hereinafter "Dkt."]) [hereinafter A_].

[2] A10–11 (Indictment by the Grand Jury).

[3] A7 (Dkt. No. 37).

[4] *See generally* Trial Tr.; *see also* Opening Br. (dated July 7, 2025) at 8.

[5] A823 (Trial Tr., dated Apr. 22, 2024).

[6] A824 (Trial Tr.) (the time stamp shows that the trial court had received both notes by 11:41 AM).

[7] A857 (photocopy of the first note).

[8] A859 (photocopy of the second note) (all caps in original).

(4)     The trial judge discussed both notes with the attorneys before bringing the jury back into the courtroom.[9]  The court briefly responded to the first note, and then responded to the second note as follows: [10]

> Your second question, it says if the jury has reached a verdict on one or more charges but not all and is unable to reach consensus on the remaining, is the entire decision nullified.  Short answer no.  Or is a partial hung jury accepted.  Well, if we have to, it can be.  What would happen in those circumstances is we would take the verdict on the counts which you were able to agree and we would take a mistrial on the counts that you were unable to agree upon.  I don't know if all of this means that you're hopelessly deadlocked forever or if there was any clarity in what I just explained to you and you're ready to render full verdicts, so I don't want to belabor this point longer than necessary.  I would just ask that you go back, continue your deliberation.  Lunch is on the way.  And if you're able to reach a unanimous verdict, obviously that's position A for everybody, if we can.  If we can't, we'll have more to talk about.  Okay?  Thank you.  And thank you for your patience, folks.  You're free to go back.[11]

(5)     A few hours later, the jury rendered a partial verdict, convicting DeAngelis of one count of fourth-degree rape and one count of second-degree assault.[12]  The jury did not reach a verdict on the second-degree rape count.[13] Following the partial verdict, DeAngelis filed a motion for a new trial claiming that

---

[9] A824–34 (Trial Tr. 2:10–12:15).

[10] The trial court's response to the jury's first note concerned only a legal definition and is irrelevant to the instant appeal.  *See* A834–35 (Trial Tr. 13:2–14:7).

[11] A836–37 (Trial Tr. 14:8–15:6).

[12] A842 (the time stamp shows that the jury reentered courtroom to deliver its verdict at 1:33 PM); A842–43 (Trial Tr. 20:9–21:13).

[13] *Id.*

3

the trial court's response to the second note was a coercive *Allen* charge that unduly influenced the jury's verdict.[14] The Superior Court denied the motion and DeAngelis appealed.[15]

(6) On appeal, DeAngelis contends that the court erred in denying his motion for a new trial because the trial court's response to the jury's second note was a coercive *Allen* charge.[16] Should we agree with DeAngelis and find that the response was an *Allen* charge,[17] we must then examine the *Allen* charge against the four-factor test articulated in *Streitfeld* to determine whether it had a coercive effect on the jury.[18] If we find that the response was not an *Allen* charge, however, our analysis ends there.[19]

---

[14] A7 (Dkt. No. 38); *see also* Ex. A to Opening Br. at 4 (Order dated Aug. 27, 2024) [hereinafter *Order*].

[15] *Order* at 6; *see also* A8 (Dkt. No. 48).

[16] Opening Br. 2.

[17] *Id.* at 12 (DeAngelis characterizes the trial court's response to the second note as a "modified *Allen* charge").

[18] *See Streitfeld v. State*, 369 A.2d 674, 677 (Del. 1977) (The four factors are "the time of day when the instruction was given, the words used, the length of the deliberations both before and after the instruction, and the complexity of the case.").

[19] *See e.g. Smith v. State*, 341 A.3d 511, 2025 WL 1473872, at *2 (Del. May 22, 2025), as corrected (May 23, 2025) (TABLE) ("The trial judge's . . . instruction to the jury to return to its deliberations did not amount to an *Allen* charge. We therefore do not need to consider whether the charge met the four-factor coercion test applicable to *Allen* instructions."); *Adkins v. State*, 454 A.2d 732, 735 (Del. 1982) (the discussion ends once the Court has concluded that "[t]he statement did not constitute an *Allen* 'dynamite' charge or require the 'personal conscience' admonition.").

(7) We review the trial court's grant or denial of a motion for a new trial for abuse of discretion.[20] We also apply the abuse of discretion standard when reviewing the trial court's use of an *Allen* charge.[21]

(8) "An *Allen* charge is a supplemental instruction encouraging the jury to reach a verdict and amounts to a request from a trial court to the jury to attempt to come to a decision without abandoning any firmly held beliefs."[22] Not every communication from a trial court instructing the jury to continue deliberations qualifies as an *Allen* charge. For example, in *Adkins v. State*, we did not view the trial court's supplemental instruction to the jury as an *Allen* charge.[23] There, the *Adkins* Court reasoned as follows:

> The supplemental charges in *Allen* and *Brown* involved coerced reconsideration, i.e., instruction to the jurors, after they announced a deadlock, to consider one another's views with a disposition toward being convinced. . . . By contrast, in the instant case, the Trial Judge did not instruct the jury to deliberate further on the Conspiracy charges as to which it had announced deadlock; his comments regarding continued deliberations were addressed solely to the Assault charges as to which deadlock had not been announced. The Court did not expressly or implicitly request any juror to reconsider his or her views in deference to the majority; the Court's statement did not indicate, directly or by inference, that a verdict must or should be returned. . . . The plain language of the Trial Court demonstrated its willingness to accede to a hung jury and, thereby, to respect the personal convictions

---

[20] *Waters v. State*, 242 A.3d 778, 782 (Del. 2020).

[21] *Collins v. State*, 56 A.3d 1012, 1019–20 (Del. 2012).

[22] *Smith*, 2025 WL 1473872, at *2 (internal quotation marks omitted).

[23] *Adkins v. State*, 454 A.2d 732 (Del. 1982).

5

of the jurors. The statement did not constitute an *Allen* "dynamite" charge or require the "personal conscience" admonition.[24]

(9) Here, like in *Adkins*, the jury did not report a deadlock on the charges submitted to them. Instead, the jury's second note posed a hypothetical question: what would happen *if* they could not reach a unanimous verdict? Therefore, the trial court's comments "regarding continued deliberations were addressed solely to . . . charges as to which deadlock had not been announced."[25] The trial court also explicitly stated that "we would take a mistrial on the counts that you were unable to agree upon,"[26] and that "if we have to, [a partial hung jury] can be [accepted]."[27] This statement conveyed the trial court's "willingness to accede to a hung jury and, thereby, to respect the personal convictions of the jurors."[28]

(10) Still, DeAngelis asks us to distinguish the instant case from *Adkins* and recognize the court's response as an *Allen* charge. DeAngelis points out that, in *Adkins*, the court did not "indicate, directly or by inference, that a verdict must or should be returned."[29] Whereas here, the court implied that a verdict should be returned by stating "if you're able to reach a unanimous verdict, obviously that's

---

[24] *Id.* at 734–35 (citations omitted).

[25] *Id.* at 735.

[26] A836 (Trial Tr. 14:15–17).

[27] *Id.*

[28] *Adkins*, 454 A.2d at 735.

[29] *Id.*

6

position A for everybody."[30]  DeAngelis construes the trial judge's message—that a unanimous verdict would be "position A for everybody"—as conveying to the jury that the court preferred a verdict over a hung jury.[31]  We disagree.

(11)  In *United States v. Lena*,[32] the United States District Court for the Western District of Pennsylvania faced a similar situation.  The jury in *Lena*, like the jury here, did not report that it was deadlocked, but instead asked "whether [the jury] could render a verdict as to only one of the two counts."[33]  The trial judge responded by instructing the jury to continue its deliberation and, more importantly, to "mak[e] some reasonable effort to reach a unanimous verdict."[34]  Upon review of a motion for a new trial, the district court held that the language used by the trial judge did not constitute an *Allen* charge because:

> [When] a court responds to the first sign of a deadlock merely by suggesting continued deliberation and does not "refer to the expense of a second trial or the need for the minority to reconsider its votes, [impose any] coercive deadline, [make] . . . threats of marathon deliberations, [or exert] . . . pressure for the surrendering of conscientiously held minority views," there has been no coercion of the jury.[35]

---

[30] A837 (Trial Tr. 15:1–3).

[31] Opening Br. 11–12.

[32] 497 F. Supp. 1352 (W.D. Pa. 1980), *aff'd*, 649 F.2d 861 (3d Cir. 1981) (TABLE).

[33] *Lena*, 497 F. Supp. at 1363.

[34] *Id.*

[35] *Id.*

7

(12) We find the reasoning in *Lena* instructive. Here, like in *Lena*, even if the court indicated a preference for a unanimous verdict, it did not "refer to the expense of a second trial or the need for the minority to reconsider its votes; the court did not impose any coercive deadline,"[36] or threaten the jury with a "marathon deliberation."[37] Applying *Lena*'s reasoning to the present case, we find that the trial court's response was not an *Allen* charge. Thus, we need not apply *Streitfeld*'s four-factor coercion test.[38]

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[36] *Id.*

[37] *Id.*

[38] *See Smith*, 341 A.3d 511, 2025 WL 1473872, at *3.

8